Exhibit A

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

This General Release and Settlement Agreement ("Agreement") is made and entered into by and between Mitzi McLeod ("McLeod"), Sigman Veterinary Clinic, Inc., and Cathy Sigman.

I

For and in consideration of the execution of this Agreement by McLeod, Sigman Veterinary Clinic, Inc. agrees to pay McLeod the gross amount of nine thousand dollars ($9,000.00) as follows:  (a) a check made payable to the law firm of Mays & Kerr LLC in the gross amount of $4,170.00 (four thousand one hundred seventy dollars), issuing Mays & Kerr LLC (Tax Id # 45-1481866) a Form 1099 at year-end for such payment; (b) a check made payable to Mitzi McLeod (SSN: 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) in the gross amount of $3,220.00 (three thousand two hundred and twenty dollars), issuing McLeod a Form 1099 at year-end for such payment; and (c) a check made payable to Mitzi McLeod (SSN: 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) in the amount of $1,610.00 (one thousand six hundred and ten dollars), less withholdings, issuing McLeod a W-2 at year-end for such payment.  These payments are provided in settlement of all of McLeod's claims against Cathy Sigman, Sigman Veterinary Clinic, Inc. and/or all of its affiliated companies, customers, clients, employees, officers, directors, and representatives, including the claims set forth in the Complaint currently pending in the United States District Court for the Northern District of Georgia, Case No. 1:11-CV-3457-SCJ, captioned *Mitzi McLeod v. Sigman Veterinary Clinic and Cathy Sigman* (the "Lawsuit"), but not including any claims arising under the Georgia Worker's Compensation Act (such claims are explicitly reserved by McLeod).

Delivery of the aforementioned settlement checks shall be made to McLeod's attorney of record, Jeff Kerr, within five (5) business days following receipt by defense counsel,

Martenson, Hasbrouck & Simon LLP, of the original copy of this Agreement executed by McLeod. McLeod's attorney will hold the settlement checks in trust until such time as the Court approves an executed version of this Agreement and dismisses the Lawsuit with prejudice.

II

For and in consideration of the agreements and commitments set forth above, the receipt and sufficiency of which are hereby acknowledged, McLeod does hereby knowingly and voluntarily release and forever discharge, both jointly and severally, Sigman Veterinary Clinic, Inc., its subsidiaries and affiliates, and its officers, including but not limited to Cathy Sigman, directors, employees (current and former), shareholders, attorneys, servants and agents, together with their successors and assigns (hereinafter collectively referred to as the "Releasees") from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown, which McLeod ever had, now has, or may or might in the future have against the Releasees, arising out of events or occurrences which arose at or before the moment McLeod signs this Agreement, including, but not limited to (i) those claims arising under the Fair Labor Standards Act, and any other applicable state and/or local wage and hour statutes; (ii) those claims arising under the Family & Medical Leave Act and/or any local or state equivalent; (iii) those claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, and/or any other applicable state fair employment practices statute, and/or any ordinance promulgated by any county, municipality, or other state subdivision; (iv) those claims arising under the Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq.* and/or Georgia's Equal Pay Act, O.C.G.A. Title

2

34, Ch. 5, § 1 *et seq.*; (v) those claims arising under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.*, including, but not limited to, salary, severance pay and accrued time, and any other benefits; (vi) those claims arising under the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.*; (vii) those claims arising under the Whistleblower Protection Act of 1989, 5 U.S.C. § 1201 (2000) *et seq.*, the Dodd-Frank Wall Street Reform and Consumer Protection Act, 124 Stat. 1376 (July 21, 2010), and/or any other state or federal whistleblower protection statute, act, regulation or provision; (viii) those claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et. seq.* and/or Georgia's Equal Employment for Persons with Disabilities Code, O.C.G.A. Title 34, Art. 64, Ch. 6A, § 34-64-1 through 34-64-6; (ix) those claims arising under the Worker Adjustment and Retraining Notification Act; (x) those claims arising under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*; (xi) those claims arising under any federal or state handicap or disability discrimination act, regulation or executive order; (xii) those claims for retaliatory or wrongful conduct of any kind; (xiii) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xiv) those claims for breach of duty, misrepresentation, fraud, negligence (including but not limited to negligent hiring, retention, and/or supervision), libel, slander, defamation or tortious conduct of any kind; (xv) those claims for interference with business relationships, contractual relationships, or employment relationships of any kind; (xvi) those claims for breach of duty and/or the implied covenant of good faith and fair dealing; (xvii) those claims for interference with and/or breach of contract (express or implied, in fact or in law, oral or written); (xviii) those claims arising under or in reliance upon any statute, regulation or ordinance (local, state, or federal); (xix) those claims for violation of public policy; (xx) any and all other claims which McLeod ever had, now has, or

3

may or might in the future have arising by reason of or in any way connected with any employment relationship which may have existed prior to or on the date hereof between McLeod and Sigman Veterinary Clinic, Inc. and/or the termination of that relationship, provided, however, that this Agreement does not affect, limit, curtail, or extinguish any of McLeod's rights under the Georgia Workers' Compensation Act arising out of her employment with Sigman Veterinary Clinic. McLeod and Releasees agree that McLeod will continue to pursue her pending worker's compensation claim against Sigman Veterinary Clinic, and they agree that this Agreement involves no waiver or release of claims arising under the Georgia Worker's Compensation Act.

III

McLeod further acknowledges and covenants that, in consideration for the agreements and commitments set forth in Paragraph I hereof, she has knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to her, including, without limitation, claims for contract or tort damages of any type, claims for legal or equitable relief under either federal or state statutory and common law, claims for back pay, reinstatement and recovery of attorneys' fees, and the right to be a member in any class in any lawsuit or administrative action arising out of her employment with Sigman Veterinary Clinic, Inc. McLeod further warrants that as of the time of execution of this Agreement, she has not assigned or transferred any claims of any nature that she would otherwise have against the Releasees. McLeod acknowledges that nothing in this Agreement prevents her from filing a charge or complaint with the Equal Employment Opportunity Commission ("EEOC") or cooperating in any investigation or proceeding conducted by the EEOC. However, McLeod understands and agrees that, if she files a charge or complaint with the EEOC or another state

4

or federal agency (including the Department of Labor), or if the EEOC or another state or federal agency independently pursues relief on behalf of McLeod, McLeod shall not accept any damages or benefits awarded in her favor, if any, including without limitation, any damages or injunctive relief specific to McLeod. McLeod further agrees and covenants that she knowingly and voluntarily entered into and executed this Agreement after deliberate consideration and opportunity to negotiate concerning all of its terms and provisions, that she was not coerced, pressured or forced in any way by Sigman Veterinary Clinic, Inc., Cathy Sigman, or anyone else to accept the terms of this Agreement, and that the decision to accept the terms of this Agreement was entirely her own after full opportunity for consultation with the person or persons of her choosing. McLeod also acknowledges and agrees that she understands that she may be giving up certain legal rights by entering into this Agreement.

IV

McLeod acknowledges and agrees that the payments conferred on her herein are in excess of any amounts owed to her by Sigman Veterinary Clinic, Inc. and that the payment to her of the amounts set forth in Paragraph I will result in McLeod having been paid for any and all wages (i.e. hourly wages and/or overtime compensation) purportedly owed to her for her tenure of employment with Sigman Veterinary Clinic, Inc. It is further understood that the payments conferred herein are not to be construed as an admission of liability on the part of Sigman Veterinary Clinic, Inc. or Cathy Sigman, by whom liability is expressly denied.

V

McLeod further acknowledges and covenants not to sue the Releasees, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any

claim released by her herein.  McLeod also acknowledges and covenants that she understands that after signing this Agreement, she cannot proceed against any person or party mentioned in it with respect to or on account of any of the matters referred to in it.  McLeod further agrees that she will file a Stipulation of Dismissal With Prejudice with the Court in a form substantially similar to that attached hereto as Exhibit A and will thereafter take whatever steps are necessary to ensure that the Lawsuit is dismissed with prejudice.

VI

McLeod and her counsel shall be responsible for the payments of any and all local, state, and/or federal taxes which may be attributable to the payments described in Section I above and indemnify and hold Releasees harmless from any and all tax consequences, including interest and/or penalties, arising out of those payments.

VII

In further consideration of this Agreement and the commitments set forth in Paragraph I hereinabove, McLeod does hereby agree and acknowledge that she is not entitled to and will not seek employment, reemployment and/or reinstatement with Sigman Veterinary Clinic, Inc. and/or its successors or assigns.

VIII

McLeod does further covenant that she shall make no disclosure of any kind concerning this Agreement and the sums paid as consideration hereof to any person, persons or organization other than her spouse or as required by a court of law (*e.g.*, by virtue of a validly issued subpoena), or to her attorney, accountant or tax advisor, and then only to the extent necessary to prepare the federal, state or local tax returns or other documents required by law to be filed. While not limiting the generality of the foregoing, "disclosure" includes a statement, written or

6

oral, to any person, newspaper, magazine, radio, television station or publishing company. McLeod does further agree that if she is asked about her claims or about this Agreement, she will state only that "The matter is over."

## IX

Releasees covenant that they shall make no disclosure of any kind concerning this Agreement and the sums paid as consideration hereof to any person, persons or organization other than their spouses or as required by a court of law (*e.g.*, by virtue of a validly issued subpoena), or to their attorneys, accountants or tax advisors, and then only to the extent necessary to prepare the federal, state or local tax returns or other documents required by law to be filed. While not limiting the generality of the foregoing, "disclosure" includes a statement, written or oral, to any person, newspaper, magazine, radio, television station or publishing company. Releasees further agree that if they are asked about the Lawsuit or about this Agreement, they will state only that "The matter is over."

## X

McLeod agrees and covenants that she will not directly or indirectly, orally or in writing, disparage Sigman Veterinary Clinic, Inc., its services, employees (current and former), officers, directors, representatives, agents and/or attorneys in any way or interfere in any way with its relationships with its customers or employees. Releasees similarly agree and covenant that they will not directly or indirectly, orally or in writing, disparage McLeod. With respect to the term "disparage" utilized in this Paragraph, it shall be defined to include anything negative and/or unflattering, whether true or untrue. Nothing in this paragraph, however, is intended to prevent the individuals detailed herein from providing truthful testimony and/or information when under

lawful subpoena to do so or when otherwise required by law to do so.

## XI

For and in further consideration of the execution of this Agreement by McLeod, Sigman Veterinary Clinic, Inc. and Cathy Sigman agree that McLeod shall direct all prospective employers to Cathy Sigman (telephone: (678) 313-3640), and Mrs. Sigman will respond to prospective employers of McLeod with information limited to McLeod's dates of employment and positions held with Sigman Veterinary Clinic, Inc., unless required by law to respond otherwise.

## XII

McLeod agrees and covenants that she has carefully reviewed, studied and thought over the terms of this Agreement, and that all questions concerning this Agreement have been answered to her satisfaction. McLeod further represents and agrees that she was advised and encouraged, prior to her execution of this Agreement, to discuss and review all aspects of this Agreement with her private attorney and that she has, to the extent she wished to do so, availed herself of this opportunity.

## XIII

It is also understood and agreed that this Agreement is executed by McLeod voluntarily and is not based upon any representations or statements of any kind made by Sigman Veterinary Clinic, Inc. or Cathy Sigman or any of their representatives as to the merits, legal liabilities, or value of any current or potential claims which McLeod may have. McLeod also acknowledges that no promise or inducement for this Agreement has been offered or made, except as herein set forth, and this Agreement contains the full terms of the agreement between McLeod, Sigman Veterinary Clinic, Inc., and Cathy Sigman.

## XIV

This Agreement shall be binding upon McLeod, her heirs, executors, administrators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through McLeod based or founded upon any of the claims released herein. McLeod acknowledges that this Agreement is made and entered into in the State of Georgia and shall, in all respects, be interpreted, enforced and governed under the laws of said State. The parties hereby acknowledge that this Agreement is enforceable in the state or federal courts of Georgia. McLeod hereby waives any defenses to the assertion of personal jurisdiction in the aforementioned courts.

## XV

Should any word, phrase, clause, sentence or paragraph of this Agreement be deemed unenforceable by a competent court of law, the enforceability of the remainder of the Agreement shall be unaffected.

## XVI

McLeod acknowledges and agrees that, should she fail or refuse to execute this Agreement, all obligations of Sigman Veterinary Clinic, Inc. and Cathy Sigman, including the obligation to pay the sums referenced in Paragraph I as set forth herein, shall be entirely null, void and of no effect.

## XVII

This Agreement constitutes the entire agreement between McLeod and the Releasees pertaining to the subjects contained herein and supersedes any and all prior and/or contemporaneous agreements, representations or understandings, written or oral. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise

9

changed in any respect or particular whatsoever except in writing duly executed by McLeod and an authorized representative of Sigman Veterinary Clinic, Inc. This Agreement is intended to fully, completely and forever resolve all disputes based upon events, omissions or acts occurring on or prior to its execution, as well as all other issues or claims in any way arising out of, or connected with, the prior employment of McLeod with Sigman Veterinary Clinic, Inc. and/or her separation from that employment.

IN WITNESS WHEREOF, Mitzi McLeod sets her hand and seal this ___21___ day of ___DECEMBER___, 2011.

_____
Mitzi McLeod

_____
For and on behalf of Sigman Veterinary Clinic, Inc.

_____
Cathy Sigman

Sworn to and subscribed before me
this 21 day of December, 2011.

_____
Notary Public [Seal]

Approved by:

/s/ Jeff Kerr
_____
Jeff Kerr
Attorney for Mitzi McLeod

10